UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| LEVI ROBINSON, | ) | CASE NO. 4:07 CV 2052 |
| | ) | |
| Plaintiff, | ) | JUDGE PETER C. ECONOMUS |
| | ) | |
| v. | ) | |
| | ) | MEMORANDUM OF OPINION |
| CARL HALT, et al., | ) | AND ORDER |
| | ) | |
| Defendants. | ) | |

On July 10, 2007, pro se plaintiff Levi Robinson filed this Bivens[1] action against Elkton Federal Correctional Institution ("FCI-Elkton") Food Service Supervisor Carl Halt, Captain Fitzgerald, Correctional Officer Temple, Case Manager Wilzak, Unit Manager Fekete, Lieutenant Johnson, Counselor John Mraulak, Correctional Officer Dickson, Correctional Officer Martin, Teacher Amy Spooner, Counselor Eargle, and Correctional Officer Richie. In the complaint, plaintiff objects to the way in which he is treated by prison officials. He seeks injunctive relief.

**Background**

On April 4, 2007, Mr. Robinson had a disagreement with his prison work supervisor, Mr. Halt. Mr. Halt, the food service manager, ordered Mr. Robinson to wash some pots and pans.

---

[1] Bivens v. Six Unknown Agents, 403 U.S. 383 (1971). While plaintiff cites 42 U.S.C. § 1983, that section is clearly inapplicable, as there is no allegation of action under color of state law.

Mr. Robinson refused to do so and informed Mr. Halt that he had a light duty restriction which prohibited him from lifting anything over seven and one half pounds and from standing on his feet for prolonged periods of time. Mr. Halt told Mr. Robinson that the pots and pans did not exceed his weight limit and that he could sit down whenever he needed to do so. Mr. Robinson still refused to perform the assigned work duty. Officer Temple was called to the scene to escort Mr. Robinson to a Lieutenant's office. Mr. Robinson claims that as they were leaving the food service area, Mr. Halt invited Officer Temple to "call...if you need some help." (Compl. at 2.) As they walked to the Lieutenant's office, Officer Temple allegedly stated to Mr. Robinson that if he didn't walk straight and stop talking, he would be forcibly subdued when they reached their destination. He indicates that when they arrived at the Lieutenant's office, they were met by two other correctional officers who escorted him to the segregation unit. He claims he did not see Lieutenant McCaudl until later in the day. He contends that although Lieutenant McCaudl agreed that he should not have been asked to wash pots and pans, he still spent twenty-nine days in segregation.

During his stay in segregation, Mr. Robinson filed several grievances. He indicates that Captain Fitzgerald came to see him regarding the grievance filed against Mr. Halt and Officer Temple. He claims he told Captain Fitzgerald that he felt Mr. Halt discriminated against him on the basis of race because another inmate with a light duty restriction was asked to wipe down tables while he was asked to wash pots and pans. He claims Captain Fitzgerald called him a "cry baby." (Compl. at 3.) He indicates that Segregation Counselor Muralak delayed giving him grievance forms which caused his grievances to be untimely. He contends that Unit Manager Fekete is the supervisor of Counselor Muralak and refused to stop by his cell to hear his complaints.

Mr. Robinson further states that while he was in segregation, Corrections Officer

Richie denied him access to his legal mail. He indicates that Officer Richie is the property officer for the segregation unit. He states he accosted Officer Richie as he passed by the cell and asked for his mail. He claims Officer Richie informed him that he was not permitted to pass out mail to the segregation inmates and stated it was the job of the unit team. Mr. Robinson disputes Mr. Richie's explanation. He further claims that Officer Richie later threatened him by stating, "you know I'm gone [sic] get you, you filed on my buddy." (Compl. at 3.)

Finally, Mr. Robinson includes claims which are unrelated to his dispute with Mr. Halt. He contends that in March 2007, Lieutenant Johnson came to see him to resolve a grievance he filed against Corrections Officer Dickson. Mr. Robinson was accused of placing a three way call to someone outside the prison by Officer Dickson, who initiated disciplinary proceedings against Mr. Robinson. Mr. Robinson was found guilty of the offense; however, it was later overturned on administrative appeal. Although the nature of the subsequent grievance against Officer Dickson is not clear, Mr. Robinson states that Lieutenant Johnson indicated to him that he would grant "the request." (Compl. at 4.) It appears that he did not follow through with the situation in the way that Mr. Robinson envisioned. Mr. Robinson points out that Lieutenant Robinson is the supervisor of Case Manager Wilzak and Counselor Eargle.

Similarly, Mr. Robinson contends he was falsely accused of assaulting another inmate on May 22, 2007. He alleges that Corrections Officer Martin escorted him to the unit manager's office. He states that while they were walking, Officer Martin called him a "coward and a punk for assaulting that inmate." (Compl. at 3.) He further alleges that Officer Martin packed up his belongings. Thereafter, Mr. Robinson determined that some of his property was missing. He filed a tort claim.

3

Mr. Robinson concludes with allegations against Ms. Spooner, the librarian. He states that she packed up his property when he was taken to segregation on one occasion in 2006. He indicates he noticed that his photo album was not with his belongings when he returned to the general population. Ms. Spooner explained to Unit Manager Fekete that she thought it was an institutional binder and threw it away. Mr. Robinson claims Mr. Fekete told him to file a tort claim.

## Analysis

Although pro se pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), the district court is required to dismiss an in forma pauperis action under 28 U.S.C. §1915(e) if it fails to state a claim upon which relief can be granted, or if it lacks an arguable basis in law or fact.[2] Neitzke v. Williams, 490 U.S. 319 (1989); Lawler v. Marshall, 898 F.2d 1196 (6th Cir. 1990); Sistrunk v. City of Strongsville, 99 F.3d 194, 197 (6th Cir. 1996). For the reasons stated below, this action is dismissed pursuant to §1915(e).

As an initial matter, it is very difficult to determine which legal claims Mr. Robinson seeks to assert because he does not specify any legal theories in his pleading. He merely includes a short narrative of facts and then claims he wants "prison officials to stop harassing me and threatening me." (Compl. at 5.) Giving this pleading the most generous construction, it is plausible that Mr. Robinson may be attempting to assert an equal protection claim against Mr. Halt, a claim

---

[2] An in forma pauperis claim may be dismissed sua sponte, without prior notice to the plaintiff and without service of process on the defendant, if the court explicitly states that it is invoking section 1915(e) [formerly 28 U.S.C. § 1915(d)] and is dismissing the claim for one of the reasons set forth in the statute. McGore v. Wrigglesworth, 114 F.3d 601, 608-09 (6th Cir. 1997); Spruytte v. Walters, 753 F.2d 498, 500 (6th Cir. 1985), cert. denied, 474 U.S. 1054 (1986); Harris v. Johnson, 784 F.2d 222, 224 (6th Cir. 1986); Brooks v. Seiter, 779 F.2d 1177, 1179 (6th Cir. 1985).

for destruction of property against Ms. Spooner and Officer Martin, and an Eighth Amendment claim against Officer Temple, Captain Fitzgerald, and Officer Richie. To the extent that this was his intention, he fails to state a claim upon which relief may be granted and dismissal is required.

### I. Equal Protection

In making an equal protection challenge, petitioner bears the initial burden of demonstrating that a discrimination of some substance has occurred against him which has not occurred against other individuals who were similarly situated. City of Cleburne,Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985); Clements v. Flashing, 457 U.S. 957, 967 (1982). Mr. Robinson has not met this burden. To suggest that he had been treated differently from a similarly situated inmate, Mr. Robinson alleges that another inmate with a light duty restriction was given the job of wiping down the tables. A light duty restriction is a medical accommodation which is specific to the individual to whom it is given. While its clear that Mr. Robinson believes his work assignment was less favorable than the assignment given to the other inmate with a light duty restriction, there is no reasonable suggestion that these two suffered from the same malady or that one job was substantially more physically demanding than the other.

Even if Mr. Robinson could demonstrate that he received disparate treatment, his equal protection claim must still fail. Merely treating two individuals differently does not violate the Equal Protection Clause. Rawls v. Sundquist, No. 96-5931, 1997 WL 211289, at *1 (6th Cir. Apr. 28, 1997). He must also show intentional or purposeful discrimination for an unlawful reason. Snowden v. Hughes, 321 U.S. 1, 8 (1944); Charles v. Baesler, 910 F.2d 1349, 1356 (6th Cir. 1990). Discriminatory purpose "implies more than intent as volition or intent as awareness of consequences. It implies that the decisionmaker...selected...a particular course of action at least in

5

part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." Personnel Admin. of Mass. v. Feeney, 442 U.S. 256, 279 (1979); Coyne v. City of Sommerville, 972 F.2d 440, 445 (1st Cir. 1992). A discriminatory purpose will not be presumed. Tarrance v. State of Florida, 188 U.S. 519, 510 (1903). The complaint contains no set of facts which would support Mr. Robinson's equal protection claim.

## II. Personal Property

The Federal Tort Claims Act provides the exclusive jurisdictional basis for tort claims against the United States and its agents. Before a party may bring such an action, however, the claim must first be submitted to the proper federal agency. 28 U.S.C. § 2675(a). While Mr. Robinson indicates that he filed a tort action, he does not elaborate sufficiently on that nature of the claim or the response, if any it received. It is impossible to determine whether the administrative prerequisites of the statute have been met.

## III. Eighth Amendment

Mr. Robinson includes several allegations concerning negative comments made to him by prison officials. Prison officials may not deprive inmates of "the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). The Supreme Court in Wilson v. Seiter, 501 U.S. 294, 298 (1991), set forth a framework for courts to use when deciding whether certain conditions of confinement constitute cruel and unusual punishment prohibited by the Eighth Amendment. A plaintiff must first plead facts which, if true, establish that a sufficiently serious deprivation has occurred. Id.. Seriousness is measured in response to "contemporary standards of decency." Hudson v. McMilian, 503 U.S. 1,8 (1992). Routine discomforts of prison life do not suffice. Id. Only deliberate indifference to serious medical needs or extreme

deprivations regarding the conditions of confinement will implicate the protections of the Eighth Amendment. Id. at 9. Plaintiff must also establish a subjective element showing the prison officials acted with a sufficiently culpable state of mind. Id. A prison official violates the Eighth Amendment only when both the objective and subjective requirements are met. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

Mr. Robinson has not alleged any facts which could be construed as a deprivation of "the minimal civilized measure of life's necessities." Rhodes, 452 U.S. at 347. Verbal harassment and offensive comments by prison officials are generally not cognizable as constitutional deprivations. See Ivey v. Wilson, 832 F.2d 950, 955 (6th Cir. 1987).

### IV. Other Claims

To the extent that Mr. Robinson intended to assert other legal claims, they are not readily discernable from the face of the pleading. Principles requiring generous construction of pro se pleadings are not without limits. See Wells v. Brown, 891 F.2d 591, 594 (6th Cir. 1989); Beaudett v. City of Hampton, 775 F.2d 1274, 1277 (4th Cir. 1985). A complaint must contain either direct or inferential allegations respecting all the material elements of some viable legal theory to satisfy federal notice pleading requirements. See Schied v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 437 (6th Cir. 1988). District courts are not required to conjure up questions never squarely presented to them or to construct full blown claims from sentence fragments. Beaudett, 775 F.2d at 1278. To do so would "require ...[the courts] to explore exhaustively all potential claims of a pro se plaintiff, ... [and] would...transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party." Id. at 1278. Moreover, plaintiff's failure to identify a particular

7

legal theory in his complaint places an unfair burden on the defendants to speculate on the potential claims that plaintiff may be raising against them and the defenses they might assert in response to each of these possible causes of action. See Wells v. Brown, 891 F.2d at 594. Even liberally construed, the complaint does not sufficiently state another federal constitutional claim or claims upon which plaintiff intends to base his action.

## Conclusion

Accordingly, this action is dismissed pursuant to 28 U.S.C. §1915(e). The court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

IT IS SO ORDERED.

S/Peter C. Economus - 10/22/07
PETER C. ECONOMUS
UNITED STATES DISTRICT JUDGE